**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MUNDO NATURAL INC.<br><br>Plaintiff,<br><br>v.<br><br>INTENERGY LLC; XYZ CORPORATION; JOHN DOE; JANE DOE<br><br>Defendants | CIVIL NO.:<br><br>TRADEMARK INFRINGEMENT;<br>TRADE DRESS INFRINGEMENT;<br>REQUEST FOR INJUNCTIVE RELIEF;<br>DAMAGES<br><br>JURY TRIAL |

**VERIFIED COMPLAINT**

**TO THE HONORABLE COURT:**

COMES NOW Plaintiff **MUNDO NATURAL, INC.** ("MN"), through the undersigned attorney, and in support of this Verified Complaint, which requests a preliminary and permanent injunctive relief, respectfully states, alleges and prays as follows:

## I. NATURE OF THE ACTION

1. This is civil action for federal trademark infringement, false designation of origin and false representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and for substantial and related claims under the statutory and common law state rights of Puerto Rico under the Puerto Rico Trademark Act of 2009, as amended, , 10 P.R. Laws. Ann. § 223, *et seq.*, all arising from Defendant's marketing, advertising, promotion, offering for sale, and sale of *NEURO-LIFE*. .

2. Plaintiff hereby seek (1) preliminary and permanent injunctive relief against Defendant's unlawful use and exploitation of the *NEUROLIFE* trademark; (2) all damages and

losses arising from Defendant's infringement and other violations; and (3) reimbursement of Plaintiff' attorneys' fees and costs.

## II. JURISDICTION AND VENUE

3. This Honorable Court has jurisdiction over this action under the Lanham Act, 14 U.S.C.A. §§ 1051 *et seq.* and pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332(a) and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

4. Venue in this Honorable Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to MN's claims occurred in this judicial district. Specifically, Defendant has and continues to improperly use Plaintiff's mark in connection with their unauthorized marketing and distribution of the infringing mark.

5. By this action, Plaintiff seek damages and permanent injunctive relief pursuant to Sections 32, 34, 35, 36, 43(a) and 43(c) of the Lanham Act, 15 U.S.C.§§1114, 1116, 1117, 1118, 1125(a) and 1125(c).

## III. PARTIES

6. Mundo Natural Inc. (hereinafter "MN") is a corporation existing and operating under the laws of the Commonwealth of Puerto Rico, with its principal place of business at 881 Ave. Campo Rico, Carolina, Puerto Rico 00924. MN actively promotes, distributes and sells numerous vitamins and natural dietary supplements under several trademarks since 1998. ***See Exhibit 1.*** This cause of action arises from the defendant's trademark infringement regarding MN's famous product under the BRAIN HEALTH house mark, *NEUROLIFE.*

7. INTENERGY LLC (hereinafter, "Intenergy" or "Defendant") is a registered

Florida limited liability company with its principal place of business at 4530 N. Hiatus Rd., Suite 107, Sunrise Florida 33351.

*8.* JOHN DOE, whose address is unknown was a distributor and/or representative of the Intenergy *NEUROLIFE* products.

9. XYZ Corporation, John Doe and Jane Doe are included as unnamed defendants who may in whole or in part be responsible for the wrongs and resulting damages caused by Defendant's infringing actions.

## III. FACTS RELEVANT TO ALL CAUSES OF ACTION

### A. MN's *NEUROLIFE* Mark

1. MN owns all rights, common law and otherwise, in and to the *NEUROLIFE* mark. MN advertises and distributes *NEUROLIFE* under its *BRAIN HEALTH* family of marks. All the products under the *BRAIN HEALTH* family of marks support and enhance brain health. Furthermore, all the products in the *BRAIN HEALTH* family of marks incorporate the term *NEURO.* As such, the following products supporting and enhancing brain health are sold by MN: NEUROCARE, NEUROCARE KIDS, NEURO-P4, NEURORELAXER, NEURO-K, NEUROSLEEP, NEURO-MG, NEURO-G. ***See Exhibit 2.***

2. *NEUROLIFE,* which belongs to the *BRAIN HEALTH* family of marks, is a 100% natural product to enhance the brain's essential nutrients by assisting persons to maintain adequate levels of cholesterol, improving their immunological system and preventing anxiety and attention deficiency. ***See Exhibit 2, page 9***.

3. The *NEUROLIFE* mark was first used by MN in commerce throughout the United States, including Puerto Rico, since **November 2010,** in connection with the distribution, offering for sale, sale, marketing, advertising and promotion of natural nutritional and dietary supplements

to enhance the brain's essential nutrients. Attached hereto as ***Exhibit 3*** are photographs of representative samples of materials showing Plaintiff' use of the *NEUROLIFE* in connection with these goods.

4. Since November 2010, Plaintiff has continually expanded use of the NEUROLIFE mark in commerce in connection with natural nutritional and dietary supplement products, reaching foreign markets, such as the Dominican Republic.

5. Plaintiff' *NEUROLIFE* mark also bears a distinctive trade dress, which incorporates unique design elements for the label, the colors, and other elements of the commercial image of the *NEUROLIFE* marks which are inherently distinctive and non-functional.

6. As a result of the widespread, continuous, and exclusive use of MN's *NEUROLIFE* product to identify its nutritional and dietary supplement products to enhance the brain's essential nutrients and Plaintiff as its source, Plaintiff has acquired and owns valid and subsisting federal statutory and common law rights to the *NEUROLIFE* mark and trade dress.

7. Plaintiff's *NEUROLIFE* mark and trade dress are inherently distinctive to both the consuming public and Plaintiff's trade. As a result of MN's continued and exclusive use of its *NEUROLIFE* trademark and trade dress for almost fourteen (14) years and its marketing, promotion and sale of the *NEUROLIFE* products, consumers immediately associate the *NEUROLIFE* trademark and trade dress as products offered for sale by MN.

8. Over the years, by way of my marketing and promotional efforts, which include the making and distributing promotional merchandise including flyers, brochures, magazine and newspaper ads, TV and radio commercials, all bearing the BRAIN HEALTH products, which include, *NEUROLIFE*, MN has expended significant sums of money. In fact, in 2022 and 2023

alone, MN expended $685,000.00 and $851,600.00, respectively, on the marketing, advertising, and promotion of the BRAIN HEALTH's products, which include the *NEUROLIFE* mark.

9. MN's *NEUROLIFE* products are marketed, distributed, offered for sale, and sold through the websites https://organicfarmsvitamins.com/ and https://mundonatural.tv, Facebook, Amazon, Instagram, radio, television and YouTube.

10. As a result of Defendant's infringing distribution, marketing and offering for sale of colorable imitations of Plaintiff's *NEUROLIFE* products, Plaintiff has and continues to suffer a significant decrease in its profits. MN sold on 2011 a total of 160 units of *NEUROLIFE* which resulted in a profit of $3,930.00. MN's promotional and advertising efforts resulted in a significant increase in profits since on 2012, MN sold 1,688 units of *NEUROLIFE* products which resulted in a profit of $46,991.00. The significant decrease of MN's profits has been greatly impacted by Defendant's infringing activities and on this year alone MN has sold only two (2) units even though it has continuously advertised its *NEUROLIFE* products in various mediums.

11. Due to Plaintiff' promotional efforts over the last fourteen (14) years, the NEUROLIFE mark and trade dress have developed widespread recognition and valuable goodwill in the nutritional and dietary supplements industry in both the United States and Puerto Rico. The *NEUROLIFE* mark and trade dress and the goodwill associated therewith are of inestimable value to Plaintiff.

12. As a result of Plaintiff's expenditures and efforts, the *NEUROLIFE* mark and trade dress have come to signify the high quality of the natural nutritional and dietary supplement products promoted and distributed by MN to enhance the brain's essential nutrients and have acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiff.

13. Due to Plaintiff' longstanding use of the *NEUROLIFE* mark, Plaintiff has the exclusive right to use the *NEUROLIFE* mark and trade dress in connection with natural nutritional and dietary supplement products to enhance the brain's essential nutrients.

**B. Defendant's Infringement of the *NEUROLIFE* .**

14. Notwithstanding Plaintiff's prior exclusive rights to the *NEUROLIFE* mark and trade dress, Defendant has adopted and commenced to use in interstate commerce the confusingly similar *NEURO-LIFE* mark and trade dress in connection with nutritional and dietary supplement products also promoted and allegedly designed to also enhance cognitive function, improve memory, and boosting essential nutrients to the brain. In other words, copying and designing a product with the mark and trade dress bearing the *NEUROLIFE* mark which belongs exclusively to Plaintiff. Attached hereto as ***Exhibit 4*** are true and correct copies of Intenergy's use of Plaintiff's mark and trade dress.

15. Defendants are using the confusingly similar and identical literal element of MN's mark, that is, *NEUROLIFE* and a colorable imitation of Plaintiff's trade dress for *NEUROLIFE*.

16. Defendant's packaging clearly demonstrates that Defendant has intentionally copied Plaintiff's *NEUROLIFE* mark. In addition, Defendant distributes and offers for sale a virtually identical trade dress:

**Plaintiff's *NEUROLIFE* goods**   **Defendant's *NEURO-LIFE* goods**

     

17. In terms of its design, Defendant's product labeling and trade dress (shown above at right) makes prominent use of the term *NEURO-LIFE*. In addition, pictographical elements, that is, the human silhouette, and color-scheme used in Defendant's labeling and trade dress are confusingly similar to Plaintiff' *NEUROLIFE* labeling and trade dress (shown above at left).

18. Plaintiff's trade dress (packaging) for its *NEUROCARE* products is not functional and is inherently distinctive and/or has acquired secondary meaning due to MN's prolonged continuous and exclusive use and promotional efforts.

19. Defendant's use of such a colorable imitation of Plaintiff's *NEUROLIFE* trade dress causes confusion among consumers, who associate Defendant or its products with MN's products. In other words, a reasonable consumer is likely to believe that *NEURO-LIFE* is affiliated or connected with, or sponsored or approved by MN.

20. Defendant's products under are in direct competition to Plaintiff's *NEUROLIFE* products since it is also used to provide essential nutrients to the brain.

21. Defendant distributes, markets, advertises, promotes, offers for sale, and sells dietary supplements under the mark and trade dress in the same trade channels, that is, on the Internet and www.walmart.com and targets the same class of consumers, as does MN with its

*NEUROLIFE*-branded products.

22. Defendant's promotional efforts include advertisements in newspapers with island-wide circulation, billboards, and an internet web site located at the internet domain name <intenergyusa.com> which is accessible by consumers from all the markets where MN has exclusive rights to the *NEUROLIFE*, including Puerto Rico. ***See Exhibit 4.***

23. Defendant's use of the *NEURO-LIFE* Mark in connection with its nutritional and dietary supplements is deceptively and confusingly similar to MN's well-known *NEUROLIFE*. The likelihood of confusion is particularly pronounced because Defendant is engaged in the nutritional and dietary supplement industry and promotes its goods using a name that incorporates the *NEUROLIFE* trademark and trade dress in its entirety.

24. Thus, Defendant's *NEURO-LIFE* mark is essentially identical and substantially similar, orthographically and phonetically, to, and creates the same commercial impression as, Plaintiff' *NEUROLIFE* .

25. Plaintiff' did not authorize Defendant to offer nutritional and dietary supplement products bearing a name that is essentially identical to the *NEUROLIFE* trademark.

26. Defendant has no affiliation, association, or connection whatever with Plaintiff. Plaintiff does not sponsors, endorses, approves or authorizes any of Defendant's activities, including the offering of any nutritional and dietary supplements using the *NEUROLIFE* mark or trade dress or any other name or trade dress confusingly similar thereto in connection therewith.

27. Defendant, without Plaintiff' authorization, express or implied, and with full knowledge of Plaintiff' prior longstanding rights in and to the *NEUROLIFE* mark and trade dress, is willfully and knowingly using the *NEUROLIFE* name for the purposes of (a) trading on the

goodwill and reputation of Plaintiff' products, (b) capitalizing on the *NEUROLIFE* mark and trade dress, and (c) misleading consumers into believing that its products are sponsored by or affiliated or connected to MN, and that Defendant's product has characteristics and qualities that are substantially similar to those of Plaintiff.

28.     Defendant offers competing nutritional and dietary supplement products for the same reason as those offered by MN, that is, vitamins and natural supplements to enhance the brain's essential nutrients. Thus, the products offered by Defendant are in the same class as those offered by MN.

29.     A Google Internet search of "NEUROLIFE" reveals that right before Plaintiff's *NEUROLIFE* product, Defendant's *NEURO-LIFE* product appears advertised in its website https://www.intenergy.com. *See* Google search attached hereto as ***Exhibit 5.***

30.     On August 11, 2023, Defendant filed an application before the Puerto Rico Trademark Registry for the *NEURO-LIFE* mark for dietary and nutritional supplements. Said application, which was filed under penalty of perjury, represented that the mark was first used in commerce on **January 6, 2012**. Said application was assigned Serial No. 25-4029-05-1. ***See Exhibit 6.***

31.     Nonetheless, on September 28, 2023, once again under penalty of perjury, Defendant filed an application before the United States Patent and Trademark Office to register the mark *NEURO-LIFE* once again for dietary and nutritional supplements, only this time providing a different date of first use, that is, **February 19, 2012**. Said application was assigned Serial No. 98201504. ***See Exhibit 7.***

32.     Because of the similarity of the nutritional and dietary supplement products offered, Defendant's use of the *NEURO-LIFE* trademark is likely to confuse the consuming public into

believing that Defendant's goods originate from, are affiliated, or connected with or are sponsored or approved by MN.

33. Defendant's unauthorized use of the *NEURO-LIFE* trademark has caused and continues to cause irreparable damage to the reputation and goodwill of MN, who has no control over the characteristics or qualities of Defendant's activities and products. Furthermore, the ingredients used in Defendant's infringing products may not be advisable to the consuming public in as much as they do not replicate MN's line of products.

34. Defendant's unauthorized use of *NEURO-LIFE* trademark has caused and continues to cause irreparable damage to the public, who are deceived and confused or who are likely to be deceived or confused as to the origin, association, connection or sponsorship of the Defendant and its services.

35. It is impossible at this time to know with precision how many persons throughout Puerto Rico and the rest of the United States have been confused by Defendant's use of the *NEURO-LIFE* trademark or have been deceived into believing that MN authorizes, sponsors, or approves Defendant's business, its use of the *NEURO-LIFE* trademark or that Defendant is affiliated or connected in any way with MN.

**C. Pre-Litigation Discussions Between the Parties**

36. On or around August of 2023, Plaintiff became aware of Defendant's offering for sale *NEURO-LIFE* products.

37. A cease-and-desist letters was sent to Intenergy on August 1, 2023 regarding its unauthorized and infringing use of the *NEUROLIFE* Mark (including the *NEUROLIFE* trade dress). *See* letter dated August 1, 2023 attached hereto as ***Exhibit 8.***

38. On August 10, 2023, Intenergy responded, through counsel, with a short letter requesting an additional 15-day period to respond to Plaintiff' cease and desist letter. *See* letter dated August 10, 2023, attached hereto as ***Exhibit 9.***

39. On August 24, 2023, Defendant sent a letter essentially rejecting the claims set forth in the August 1, 2023 cease-and-desist letter. *See* letter dated August 24, 2023, attached hereto as ***Exhibit 10.***

40. On September 7, 2024, Plaintiff sent a letter to Defendant stating that Plaintiff's *NEUROLIFE* mark and trade dress has been in continued use in commerce since at least as early as November 2010 and, thus, Plaintiff' use of the *NEUROLIFE* in commerce predates Defendant's use of the same. Thus, Plaintiff owns all rights, title, and interest in and to the *NEUROLIFE* mark and trade dress. *See* letter dated September 7, 2023 attached hereto as ***Exhibit 11.***

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FEDERAL TRADEMARK INFRINGEMENT

41. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 40 hereof, as if fully set forth herein.

42. Defendant's use of the *NEURO-LIFE* mark infringes MN's *NEUROLIFE* mark and trade dress and is likely to cause confusion, mistake and deception of the public as to the identity and origin of Defendant and its business and product, causing irreparable harm to MN for which there is no adequate remedy at law.

43. Defendant's use of the *NEURO-LIFE* Mark constitutes a false designation of origin and unregistered trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

44. Plaintiff believes that Defendant knew or should have known of Plaintiff' exclusive

rights to the *NEUROLIFE* trademark and trade dress and that, therefore, Defendant's infringement of the *NEUROLIFE* and trade dress is willful.

45. Defendant's conduct is causing immediate and irreparable damage and injury to Plaintiff, and to its goodwill and reputation, and will continue to damage Plaintiff and confuse the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

46. Plaintiff are entitled to an order enjoining Defendant from using the *NEURO-LIFE* trademark and trade dress or any other name substantially similar to Plaintiff' *NEUROLIFE* mark and trade dress.

47. By reason of the foregoing acts, Defendant is liable to Plaintiff for trademark and trade dress infringement under 15 U.S.C. § 1125(a).

**SECOND CAUSE OF ACTION**
**FEDERAL UNFAIR COMPETION**

48. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 47 hereof, as if fully set forth herein.

49. Defendant's unauthorized use of the *NEURO-LIFE* mark and trade dress is in direct competition with MN's *NEUROLIFE*-branded products and constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

50. Defendant's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

51. Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff

and confuse the public unless enjoined by this Court. There is no adequate remedy at law.

**THIRD CAUSE OF ACTION**

**FRAUD**

52. MN repeats and reallege the allegations set forth in paragraphs 1 through 51 hereof, as if fully set forth herein.

53. Under Section 14 of the Lanham Act, 15 U.S.C.A. § 1064(3), a federal registration may be cancelled if the registration was obtained fraudulently and/or by providing false statements, and/or false information to the U.S.P.T.O. The Puerto Rico Trademark Act incorporates the same principle on Article 20, 10 P.R. Laws Ann. § 223q.

54. Defendant fraudulently and by providing false statements filed trademark applications before the United States Patent and Trademark Office and the Puerto Rico Trademark Registry that are currently pending registration with different dates of first use in commerce.

55. Defendant, willfully, knowingly and in bad faith offered the agencies with false and misleading information. As such, the pending trademark applications should be cancelled.

**FOURTH CAUSE OF ACTION**

**TRADEMARK INFRINGEMENT UNDER PUERTO RICO LAW**

56. Plaintiff repeats and reallege the allegations set forth in paragraphs 1 through 55 hereof, as if fully set forth herein.

57. Plaintiff has acquired rights in and to the *NEUROLIFE* mark and trade dress and has continuously and exclusively used the *NEUROLIFE* mark in the Puerto Rico market and as such has acquired the right to use the *NEUROLIFE* in commerce well prior to Defendant's use of the same. *See* 10 P.R. Laws Ann. § 223(a).

58. As a result of Plaintiff' extensive marketing and promotion expenditures and efforts, the *NEUROLIFE* mark and trade dress has come to signify the high quality of the nutritional and dietary supplement product, it has achieved a substantial volume of sales and widespread recognition in Puerto Rico. Plaintiff's *NEUROLIFE* mark and trade dress have become valuable assets and are famous, pursuant to 10 P.R. Laws Ann. § 223y.

59. Defendant's Infringing Mark is confusingly similar to Plaintiff' famous *NEUROLIFE* mark and is promoted and offered in Puerto Rico in connection with nutritional and dietary supplements to enhance the brain's essential functions, thereby causing likelihood of confusion between consumers as to the sponsorship, affiliation or endorsement of Defendant by Plaintiff.

60. Defendant's use of the confusingly similar *NEURO-LIFE* mark and trade dress constitutes infringement of Plaintiff rights in and to the famous *NEUROLIFE* under Puerto Rico law.

61. Defendant's acts of trademark infringement have materially injured and are likely to continue to injure Plaintiff by, including but not limited to, depriving Plaintiff of associated revenues, injuring Plaintiff' reputation, goodwill, and otherwise causing Plaintiff to suffer monetary damages, loss, and injury.

62. Defendant has engaged in and continues to engage in these activities knowingly and willfully.

63. Such conduct by Defendant has allowed it to wrongfully profit and has caused and threatens to continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

64. Plaintiff is entitled to all remedies permitted under Puerto Rico law, including, but not limited, to Defendant's profits, Plaintiff losses and attorney's fees.

## V. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in its favor and against Defendant as follows:

1. Defendant, its agents, servants, employees, representative, successors and assigns and all persons, firms, or corporations in active concert or participation with Defendant, shall be enjoined and restrained, from:

   a. Directly or indirectly infringing any of MN's rights in the *NEUROLIFE* mark and trade dress, including generally, but not limited to distributing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, provide, sell, market, advertise or promote Defendant's nutritional and dietary supplement products bearing the mark *NEURO-LIFE* or any other mark and/or trade dress that is a copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's *NEUROLIFE* ;

   b. Using any mark, trade name, word, logo, or design that consists of or comprises the term *NEUROLIFE*, or engaging in any other activity, in a manner that tends to falsely represent, or is likely to confuse, mislead, or deceive purchasers, members of the buying public to believe, that:

      i. such mark belongs to Defendant;

      ii. products advertised, sold and/or offered for sale by Defendant originate from Plaintiff; or

        iii. such product is sponsored, approved, licensed by, associated, connected, or affiliated with Plaintiff in any way;

    c. Otherwise competing unfairly with Plaintiff in any manner relating to the *NEUROLIFE* mark and trade dress;

    d. Engaging in any activity constituting unfair competition with Plaintiff;

    e. Engaging in any activity of false advertisement that deceives and misleads the consuming public;

    f. Registering or applying to register any trademark, service mark, trade dress, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the *NEUROLIFE* mark or trade dress or any other mark that infringes or is likely to be confused with Plaintiff's *NEUROLIFE*, or any goods or services of Plaintiff, or Plaintiff as their source.

2. Directing Defendant to recall and deliver for destruction or other disposition all goods, advertisements, promotions, and related materials incorporating or bearing the infringing mark *NEURO-LIFE* or any other mark that is a copy, confusingly similar variation, or colorable imitation of Plaintiff *NEUROLIFE* mark and trade dress;

3. Directing Defendant to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the infringing mark *NEURO-LIFE* or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable

imitation of Plaintiff' *NEUROLIFE* mark and trade dress, and to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendant's goods to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing the infringing mark *NEURO-LIFE* or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiff's *NEUROLIFE* mark and trade dress, and to immediately remove them from public access and view.

4. Directing, pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1116(a), Defendant to file with the court and serve upon Plaintiff' counsel within thirty (30) days after service on Defendant of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied therewith.

5. Directing Defendant to account to and pay over to Plaintiff all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

6. That Defendant, its agents, servants, employees, representative, successors and assigns and all persons, firms, or corporations in active concert or participation with this Defendant, shall be enjoined and restrained, immediately from advertising products bearing the infringing *NEURO-LIFE* mark and trade dress.

7. That Defendant, its agents, servants, employees, representatives, successors and assigns and all persons, firms, or corporations in active concert or participation with this defendant,

be enjoined and restrained, immediately from distributing in Puerto Rico the *NEURO-LIFE* products.

8. That Defendant voluntarily files a request for withdrawal of its trademark application in both the United States Patent and Trademark Office and the Puerto Rico Trademark Office.

9. Awarding Plaintiff punitive and exemplary damages as the court finds appropriate to deter any future willful infringement.

10. Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), and awarding Plaintiff its costs and reasonable attorneys' fees thereunder.

11. Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

12. Awarding such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED**

On San Juan, Puerto Rico this 9th day of April 2024.

**BELÉNDEZ LAW OFFICES**
PO BOX 11534
SAN JUAN, PUERTO RICO 00922
Telephone: (787) 406-8668


By: *s/Laura Beléndez Ferrero*
USDC NO. 216301
Lbelendez@msn.com

# VERIFICATION

I, Ricardo Panneflek, of legal age and resident of Carolina, Puerto Rico, and President of Mundo Natural, Inc., hereby declare under penalty of perjury that I have read the foregoing Verified Complaint and that, to the best of my own knowledge, information, and belief, and/or according to documents and information provided or available to me, all factual allegations contained therein are true and correct.

Executed this 23 day of March, 2024 in San Juan, Puerto Rico.

President
Mundo Natural, Inc.

## VERIFICATION

I, Ricardo Panneflek, of legal age and resident of Carolina, Puerto Rico, and President of Mundo Natural, Inc., hereby declare under penalty of perjury that I have read the foregoing Verified Complaint and that, to the best of my own knowledge, information, and belief, and/or according to documents and information provided or available to me, all factual allegations contained therein are true and correct.

Executed this 23 day of March, 2024 in San Juan, Puerto Rico.

President
Mundo Natural, Inc.